UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA MARIE PRESTON,

               Plaintiff,                           Civil Action No. 12-13327

        v.                               District Judge Lawrence P. Zatkoff
                                          Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION TO**
**DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND**
**GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]**

Plaintiff Tina Marie Preston appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB"). (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment (Dkts. 9 & 11). For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's conclusions. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 11) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

Tina Marie Preston was 44-years old on the date she alleges she became disabled.  (Tr. 71.) Plaintiff has a high school education.  (Tr. 71-72.)  Plaintiff previously worked as a manager at an adult foster care home, a school bus driver, and a janitor.  (Tr. 72-73.)  Plaintiff most recently worked as a parts assembler and on an assembly line.  (Tr. 73-79.)  Plaintiff alleges that she cannot work because of continuing problems in both hands from issues associated with her carpal tunnel syndrome.  (Tr. 79-80.)

### A.  Procedural History

On July 2, 2009, Plaintiff applied for disability benefits asserting that she became unable to work on March 6, 2008.  (Tr. 119-27.)  The Commissioner initially denied Plaintiff's disability application on November 20, 2009. (Tr. 90.) Plaintiff then requested an administrative hearing and on January 5, 2011 she appeared via video conference with counsel before Administrative Law Judge John Murdock, who considered her case *de novo*.   (Tr. 68-89.)  Tim Shaner, an impartial vocational expert, also appeared at the hearing.  (*Id.*)  In an April 8, 2011 decision, ALJ Murdock found that Plaintiff was not disabled.  (*See* Tr. 28.) The ALJ's decision became the final decision of the Commissioner on July 3, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  Plaintiff filed this suit on July 28, 2012.  (Dkt. 1, Compl.)

**B.  Medical Evidence**[1]

On October 31, 2007, Dr. Charles Mueller performed an x-ray of Plaintiff's wrists and hands which showed no osseous, articular, or soft tissue abnormalities.  (Tr. 266.)  Dr. Mueller opined that there was no evidence of recent or previous bony injury involving either hand or wrist.  (*Id.*)  Because Plaintiff reported numbness and pain, referring physician, Dr. Kirk Herrick, recommended that she wear non-splinting wrist supports.  (Tr. 269.)

On December 3, 2007, Dr. Sohail Jilani performed an electrodiagnostic evaluation on Plaintiff's upper extremities.  While Plaintiff tolerated the procedure "fairly well," Dr. Jilani concluded that the study was "abnormal."  (Tr. 219.)  Nevertheless, Dr. Jilani concluded that there were no gross deformities and Plaintiff's range of motion was within functional limits without any pain or joint instability.  (Tr. 218.)  A phalen's test was positive on both sides.  (Id.)  A tinel's sign was negative bilaterally at both elbows and both wrists.  (*Id.*)  Dr. Jilani recommended that Plaintiff continue with bilateral wrist splints, avoid repetitive use of both hands, and consider surgical evaluation.  (*Id.*)

In March and April 2008, Dr. Arno Weiss performed bilateral endoscopic carpal tunnel releases.  (Tr. 237, 296.)  Prior to the surgeries, Plaintiff reported experiencing pain, numbness, tingling, loss of grip strength, and being awake at night due to the condition.  (*Id.*)  At that time, Dr. Weiss opined that Plaintiff would be able to return to work, but could not do any high speed repetitive assembly line work.  (*Id.)*  Following the surgeries, Plaintiff reported an improvement in her condition.  (*See, e.g.*, Tr. 382, 385, 387.)

---

[1]  Plaintiff does not contest anything other than the ALJ's consideration of her carpel tunnel syndrome.  As such, this Court summarizes only the evidence which is pertinent to that condition.

After surgery, Plaintiff underwent physical therapy. Her therapists reported that she was progressing "well" and was meeting expectations. (*E.g.*, Tr. 302-11.) On July 18, 2008, Plaintiff's occupational therapist, Lisa Lemke, opined that Plaintiff could not return to her previous work involving repetitive handling, and recommended light material handling tasks. (Tr. 315.) Indeed, during 2007-08, Plaintiff has several notes from physicians in her work file indicating that she was not to use vibrating tools, nor to use her hands for repetitive tasks. (*E.g.*, Tr. 248, 250, 252.)

An August 6, 2008 EMG indicated moderate bilateral median nerve dysfunction; however, Dr. Bong Jung noted that Plaintiff's bilateral symptoms had improved since surgery. (Tr. 480.)

On October 21, 2008, Dr. Gavin Awerbuch examined Plaintiff. (Tr. 318-20.) Plaintiff reported that she experienced some improvement following her surgeries, more on the left side than on the right. (Tr. 319.) Plaintiff stated that she continued to have pain, numbness, and tingling in her hands and wrists. (*Id.*) Moreover, Plaintiff reported that she needed to be careful with dropping or with picking things up. (*Id.*) Dr. Awerbuch diagnosed Plaintiff with bilateral carpal tunnel syndrome, post-carpal tunnel release. (Tr. 320.) Further, Dr. Awerbuch noted that Plaintiff's right side had a greater Quervain's. (*Id.*) An EMG showed no evidence of peripheral neuropathy or cervical radiculopathy. (Tr. 321.) Dr. Awerbuch recommended that Plaintiff continue to use her carpal tunnel splints. (*Id.*)

Dr. Weiss's October 2008 office notes indicate that Plaintiff complained about continuing pain in her hands, although a September 2008 EMG showed only mild abnormalities. (*Compare* Tr. 360, *with* 370-74.) Dr. Edward Trachman, an independent medical examiner, concluded on September 22, 2008, that further therapy was not indicated and that Plaintiff could return to work, but with limited repetitive gripping of her hands and no use of vibrating power tools. (Tr. 381.)

4

On January 16, 2009, Dr. Richard M. Singer conducted an independent medical examination of Plaintiff. (Tr. 329-32.) Dr. Singer concluded that there was a strong element of proximal nerve irritation; however, an EMG showed very minimal abnormality of the right and left postoperative median nerves. (Tr. 330-31.) Further, the ulnar nerves were intact. (Tr. 330.) As such, Dr. Singer did not recommend additional surgery. (Tr. 331-32.) Dr. Singer was concerned about the presence of a metabolic disorder and recommended that Plaintiff undergo a metabolic work-up. (*Id*.) Dr. Singer also indicated that his protocol for production workers was 8-10 weeks off their regular job followed by a "full return to work." (Tr. 332.) On February 9, 2009, Dr. Singer determined that the glucose tolerance testing was abnormal and indicative of metabolic dysfunction consistent with diabetes. (Tr. 333.) Dr. Singer concluded that Plaintiff did not have carpal tunnel syndrome, but rather a proximal nerve irritation and metabolic disorder. (*Id*.) Dr. Singer concluded that Plaintiff could return to work without restrictions other than no overhead work. (*Id*.)

On January 29, 2009, Dr. Paul G. Olejniczak performed a nerve conduction study on Plaintiff which showed mild to moderate bilateral median neuropathies at the wrists. (Tr. 349-53.) The study, however, showed no evidence on either side of distal motor axonal loss (denervation), superimposed ulnar neuropathies, superimposed brachial plexopathy, or bilateral cervical radiculopathy. (Tr. 353.)

On March 25, 2009, Dr. Bret Bielawski evaluated Plaintiff for the purpose of determining disability. (Tr. 544-46.) Dr. Bielawski concluded that Plaintiff had bilateral carpal tunnel syndrome. (Tr. 546.) Tinel's and phalen's were both positive. (*Id*.) Plaintiff's grip strength was reduced by 50% bilaterally. (*Id*.) Dr. Bielawski noted thenar atrophy, although there were no signs of rheumatoid arthritis or osteoarthritis. (*Id*.) Dr. Bielawski concluded that Plaintiff should not

return to a job where she would be assembling parts, working on the line, doing fine repetitive tasks with her hands, pulling or pushing levers, lifting or carrying heavy objects or using vibratory tools. (*Id.*)

On November 18, 2009, Jennifer Vollmer completed a physical residual functional capacity assessment. (Tr. 549-59.) Ms. Vollmer determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and Plaintiff's upper extremities were limited to occasionally pushing/pulling bilaterally. (Tr. 550.) Plaintiff was further limited in her ability to frequently handle and finger. (Tr. 552.) Plaintiff also needed to avoid concentrated exposure to vibration. (Tr. 553.)

### C. Testimony at the Hearing Before the ALJ

#### 1. Plaintiff's Testimony

Plaintiff testified that she left her job at Dura as a parts assembler to go to Delphi to work on the assembly line because it was a better position. (Tr. 75.) At Delphi, Plaintiff testified that she was working with a lot heavier parts and ended up hurting her hands. (*Id.*) Plaintiff testified that she received worker's compensation for surgery, but that she still suffers from "a lot of pain and issues with [her] hands." (*Id.*) Plaintiff testified that her grip strength is reduced by about one-half normal level. (Tr. 78.) Plaintiff also testified that surgery did not relieve her pain. (Tr. 79.) In fact, Plaintiff testified that her pain is worse than it was before she underwent the surgeries. (*Id.*) Plaintiff also testified that she has disruption of sleep during the nighttime because of her hands. (Tr. 81.) As a result, Plaintiff testified that she is tired "all day long." (*Id.*) Plaintiff testified that about six days per month the pain is so bad in her hands that she is unable to do anything. (*Id.*) Plaintiff testified that she has difficulty completing tasks because her hands get tired, she cannot pick

things up anymore, or because she just gets frustrated and stops.  (Tr. 81-82.)

### 2. *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with Plaintiff's age and educational background.  (Tr. 85.)   The ALJ gave two hypothetical questions, only differing in their exertional level.  (*Id*.)   In the first question, the VE was to assume that the person was capable of a limited range of light work, and in the second, a limited range of sedentary work.  (*Id*.)  Other than that, the restrictions were as follows:

> The person should not be expected to perform what I call industrial climbing; that is ropes, ladders, and scaffolds.  But could be expected to occasionally perform the other posturals of other climbing, balancing, stooping, kneeling, crouching, and crawling. But the position should not have any requirement for fine manipulation bilaterally.  The position should also avoid vibration, and hazardous machinery, and heights.

(Tr. 85.)  The VE indicated there would be jobs at both the light and sedentary levels for someone of Plaintiff's age, education and experience.  (Tr. 85-87.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Murdock found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 6, 2008. (Tr. 22.) At step two, he found that Plaintiff had the following severe impairments: carpal tunnel syndrome and obesity. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 23.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform:

light work as defined in 20 CFR 404.1567(b) except no climbing of

8

> ladders, ropes or scaffolds; occasional other climbing, balancing, stooping, kneeling, crouching, and crawling; no requirement for fine movements bilaterally; and no exposure to vibrations or hazards such as machinery or heights.

(*Id.*)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (Tr. 27.)  At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity.  (*Id.*)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 28.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation

9

marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Credibility Assessment

Plaintiff first challenges the ALJ's credibility determination as being "inconsistent with the objective medical evidence." (Pl.'s Mot. Summ. J. at 4.) The Court concludes that Plaintiff has not demonstrated that the ALJ reversibly erred in assessing her credibility.

A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ, however, must not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96–7p, 1996 WL 374186. In fact, the regulations

10

provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.,* 373 F.Supp.2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96–7p, 1996 WL 374186 at *2.

Here, ALJ Murdock gave detailed reasons for discounting Plaintiff's testimony. Specifically, the ALJ explained that although the existence of Plaintiff's impairment (carpal tunnel syndrome) was supported by the medical evidence, the severity was not. (Tr. 26.) In support, ALJ Murdock noted that EMG studies confirmed mild to moderate carpal tunnel syndrome prior to her March and April 2008 surgeries. (Tr. 26, 252, 256.) Although Plaintiff complained of continuing pain, numbness and tingling following the surgeries, she reported that her pain, numbness and tingling had improved. (Tr. 26, 325, 385, 387, 544.) Additionally, following the surgeries, Plaintiff's physical therapists concluded that she was able to use both hands, had reduced pain, and improved her wrist range of motion and strength bilaterally. (Tr. 26, 315.) ALJ Murdock also noted a

11

September 2008 EMG study that showed only mild abnormalities and a January 2009 EMG study that showed very minimal abnormalities.  (Tr. 26, 336, 353, 367, 381, 385.)  Additionally, the ALJ noted that Plaintiff's physicians were in disagreement whether her post-surgical symptoms were due to continuing carpal tunnel syndrome or proximal nerve irritation and a metabolic disorder.  (Tr. 26; *compare* Tr. 333, 339 *with* 363.)  Finally, in 2009, three individuals who assessed Plaintiff close in time to her disability hearing, Dr. Singer, Dr. Bielawski and Ms. Vollmer, all concluded that Plaintiff could return to work.  (*See* Tr. 333, 546, 549-59.)

Plaintiff's argument essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason.  *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011).  The Court finds no such compelling reason as substantial evidence supports the ALJ's credibility determination.

### B.     The Medical Source Opinions

Plaintiff next argues that the ALJ erred in evaluating the medical source opinions.  (*See* Pl.'s Mot. Summ. J. at 12-15.)  The Commissioner counters that Plaintiff failed to identify a specific medical opinion the ALJ erred in evaluating.  (Def.'s Mot. Summ. J. at 11.)  Such a lack of detail, contends the Commissioner, makes it nearly impossible to respond and forfeits Plaintiff's argument. (*Id*.)  The Court agrees with the Commissioner that Plaintiff's argument is raised in only a perfunctory manner, merely citing case law and making no meaningful attempt to develop a cogent argument on this point.  Plaintiff's argument is therefore forfeited.  *See Kennedy v. Comm'r of Soc. Sec*., 87 F. App'x 464, 466 (6th Cir. 2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation

marks and citation omitted)); *Baldwin v. Astrue*, No. 08–395, 2009 WL 4571850, at *3 (E.D. Ky. Dec.1, 2009) ("The Plaintiff is represented by counsel, and the Court is not required to formulate arguments on the Plaintiff's behalf.").

Furthermore, based on the Court's discussion in Part A, *supra*, and on a careful review of the record, the Court concludes that the ALJ did not reversibly err in his assessment of the medical opinions.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 11) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson_____
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  April 29, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on April 29, 2013.

s/Jane Johnson_____
Deputy Clerk

14